IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Jon Godfread, in his capacity as the North Dakota Commissioner of Insurance, and the North Dakota Insurance Department, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | **ORDER FOR REMAND** |
| vs. | ) ) ) | Case No. 1:22-cv-044 |
| Jessica K. Altman, as Rehabilitator of Senior Health Insurance Company of Pennsylvania, Patrick H. Cantilo, as Special Deputy Rehabilitator of Senior Health Insurance Company of Pennsylvania, and Senior Health Insurance Company of Pennsylvania in Rehabilitation, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

Before the Court is the Plaintiffs' motion to remand filed on April 11, 2022. See Doc. No. 9. The Defendants filed a response in opposition to the motion on May 9, 2022. See Doc. No. 18. The Plaintiffs filed a reply brief on May 16, 2022. See Doc. No. 21. For the reasons set forth below, the Plaintiffs' motion is granted.

This case was initiated by the Plaintiffs, Jon Godfread, in his capacity as the North Dakota Commissioner of Insurance ("Godfread") and the North Dakota Insurance Department ("Department") in the District Court of Burleigh County, South Central Judicial District, State of North Dakota, against the Defendants, Jessica K. Altman, as Rehabilitator of Senior Health Insurance Company of Pennsylvania ("Altman"), Patrick H. Cantilo, as Special Deputy Rehabilitator of Senior Health Insurance Company of Pennsylvania ("Cantilo"), and Senior Health Company of Pennsylvania ("SHIP") on February 4, 2022. See Doc. No. 1-1. On March 10, 2022, the Defendants removed the action to this Court. See Doc. No. 1.

1

**I.      BACKGROUND**

This action arises out of SHIP's failure to obtain Godfread's approval to alter policy rates. On January 29, 2020, SHIP, a Pennsylvania insurance company that issued long-term care insurance policies in 46 states, including North Dakota, was placed in a rehabilitation proceeding in the Commonwealth Court of Pennsylvania because of its financial decline. In its rehabilitation order, the Commonwealth Court appointed then insurance commissioner Altman and her successors as the rehabilitator. Altman appointed Cantilo as the special deputy rehabilitator. Currently, Michael Humphreys serves as acting insurance commissioner of Pennsylvania and as the rehabilitator of SHIP, as Altman's successor. The rehabilitation order acknowledged the authority of the rehabilitator to take possession of the assets of SHIP and administer them under the orders of the court.

Thereafter, the rehabilitator filed a rehabilitation plan, which was approved by the Commonwealth Court on August 24, 2021. The Commonwealth Court's order approving the plan is now on appeal to the Supreme Court of Pennsylvania. The approved plan imposes premium rate increases and/or benefit reductions and does not require these changes be submitted to each of the affected states to receive regulator approval.

According to the complaint, the plan imposes rate increases that more than double policyholders' premiums. The plan contains an "opt-out" process that allows individual states to opt-out of accepting the plan's contemplated rate methodology. If a state opts-out, the state's policyholders receive a further downgrade to their benefits. SHIP currently has 77 policyholders in North Dakota that would be affected by a rate increase.

The Plaintiffs request a declaratory judgment determining that the Defendants must "(1) comply with North Dakota law; (2) obtain Plaintiffs' approval of rate increases and benefit downgrades; and (3) not communicate policy rate changes to consumers without prior approval from

the Plaintiffs." See Doc. No. 1-1. The parties have briefed the issues and the matter is ripe for disposition.

## II.     LEGAL DISCUSSION

The Plaintiffs contend the Court lacks subject matter jurisdiction over this action. Specifically, the Plaintiffs argue they are arms of the state and thus are not citizens for purposes of diversity jurisdiction. In opposition, the Defendants contend the case is properly before the Court because the Plaintiffs are citizens of North Dakota, rather than arms of it.

When a plaintiff brings a civil action in state court, a defendant may remove the action to federal court when the amount in controversy exceeds $75,000 and there is complete diversity of citizenship among the parties. Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996); 28 U.S.C. §§ 1332 and 1441(a). Complete diversity means no defendant holds citizenship in the same state where any plaintiff holds citizenship. Jet Midwest Int'l Co., Ltd v. Jet Midwest Grp., LLC, 932 F.3d 1102, 1104 (8th Cir. 2019).  A case may be removed from state court to federal court only if the action originally could have been filed in federal court.  In re Prempro Prod. Liab. Litig., 591 F.3d 613, 619 (8th Cir. 2010).  The removing party bears the burden of showing removal was proper by a preponderance of the evidence. Id. at 620.  All doubts concerning removal must be resolved in favor of remand.  Id.  "It is axiomatic that a court may not proceed at all in a case unless it has jurisdiction." Crawford v. F. Hoffman-La Roche Ltd., 267 F.3d 760, 764 (8th Cir. 2001).

A state is not a citizen for purposes of 28 U.S.C. § 1332(a)(1). Pub. Sch. Ret. Sys. of Missouri v. State St. Bank & Tr. Co., 640 F.3d 821, 826 (8th Cir. 2011). Likewise, an entity that is an "alter ego" or "arm" of a state is not a citizen for purposes of establishing diversity jurisdiction. Id. In *State Street Bank*, the Eighth Circuit Court of Appeals articulated a test to determine whether entities are

3

arms of the state and, therefore, devoid of citizenship for diversity purposes. Identifying two factors, the court held:

> First, we consider the Systems' independence from the State of Missouri. See Thomas, 447 F.3d at 1084 (noting that the arm-of-a-State test considers an entity's "degree of autonomy and control over its own affairs"); Gorman, 257 F.3d at 743 (noting that we also consider an entity's "powers and characteristics under state law"). Second, we consider how a money judgment in litigation involving the Retirement Systems could affect the State of Missouri's treasury. See Thomas, 447 F.3d at 1084.

State Street Bank, 640 F.3d at 827.

In *State Street Bank*, the Eighth Circuit concluded two retirement systems were "alter egos" or "arms" of the State of Missouri for purposes of diversity. The court emphasized the retirement systems' lack of operational independence. The court further considered the extent of Missouri's regulation of the entities and Missouri's statutory characterization of the entities.

A review of North Dakota law reveals Godfread and the North Dakota Insurance Department are fundamentally connected to the State. Article V Section 2 of the North Dakota Constitution established the position of insurance commissioner. Pursuant to the North Dakota Constitution, the powers and duties of the insurance commissioner "must be prescribed by law." Chapter 26.1-01 of the North Dakota Century code provides, in extensive detail, the powers and duties of Godfread.

Under Chapter 26.1-01, Godfread must "[s]ee that all the laws of this state respecting insurance companies and benevolent societies are executed faithfully." N.D.C.C. § 26.1-01-03. He must report to the attorney general any violation of law relative to insurance companies, submit biennial reports to the governor and the secretary of state, and manage state funds, among other duties. Id. State law extensively regulates the way the Godfread carries out his purpose. State law prescribes the Plaintiffs' specific duties relative to enforcing insurance laws and how those duties must be accomplished, giving the Plaintiffs little operational independence. By enforcing North Dakota's insurance laws, the Plaintiffs are carrying out a function of state government, making the Plaintiffs

inherently tied to the State. For instance, the present action is brought by Godfread in his official capacity. N.D.C.C. § 26.1-01-03.2 allows the insurance commissioner to "bring an action in the district court of Burleigh County to enjoin any acts or practices which are prohibited under this title."

Further, the State recognizes Godfread and the Department as "alter egos" of the State for litigation purposes. Under Chapter 32-12.2 of the Century Code, governing legal claims against the State, the word "State" is defined to include, "an agency, authority, board, body, branch, bureau, commission, committee, council, department, division, industry, institution, instrumentality, and office of the state." N.D.C.C. § 32-12.2-01(7). Additionally, a "State employee" includes "every present or former officer or employee of the state or any person acting on behalf of the state in an official capacity." N.D.C.C. § 32-12.2-01(8). In bringing this action, Godfread is acting on behalf of the State in an official capacity, pursuant to his powers and duties prescribed by North Dakota law. The Plaintiffs and the State are inherently connected. Thus, the first *State Street Bank* prong is satisfied.

Appling the second prong of the *State Street Bank* test, the Court considers how a money judgment in litigation involving Godfread and the Department could affect North Dakota's treasury. In this action the Plaintiffs seek declaratory relief, rather than monetary relief. Thus, the Court must consider whether a money judgment in favor of the Plaintiffs would typically affect the treasury, rather than the impact in this specific case where only declaratory relief is sought.

An entity is more likely to be an arm of the state when the state retains custody over the entity's funds. Id. North Dakota law establishes an insurance regulatory trust fund and specifies amounts that must be deposited in the fund. N.D.C.C. § 26.1-01-07.1. The law further mandates that every year the state office of management and budget "shall transfer any fund balance remaining in

the insurance regulatory trust fund that exceeds one million dollars to the general fund." Id. Therefore, the State retains custody over the Plaintiffs' funds.

"[A] State's responsibility to pay an entity's obligations may also determine whether a money judgment in favor of an entity could benefit a State's treasury." State Street Bank, 640 F.3d at 831. The court in *State Street Bank* reasoned that, "if a State is responsible to pay the obligations of an entity, an entity's recovery of a money judgment as a plaintiff increases the solvency of the entity, which decreases the potential that the State will have to pay the entity's debts." State Street Bank, 640 F.3d at 831. In *State Street Bank*, the court determined the state of Missouri likely bears responsibility for certain types of the retirement systems' debts through the state legal expense fund, which makes funds available for payment of claims by state agencies. Ultimately, the court concluded a money judgment could benefit Missouri's treasury and thus the entities are arms of the state.

Similarly, the State of North Dakota bears responsibility for debts of Godfread and the Department through the state risk management fund, a fund in the State treasury consisting of contributions from state agencies. N.D.C.C. § 32-12.2-07. Therefore, a judgment obtained against the Plaintiffs could be paid from North Dakota's treasury. Consequently, a money judgment in favor of Godfread or the Department could benefit the State treasury by increasing their solvency. Therefore, the second prong of the *State Street Bank* test is satisfied.

The Defendants contend if the Plaintiffs are not citizens of North Dakota, then the Defendants likewise are not citizens of Pennsylvania, resulting in the United States Supreme Court having original jurisdiction over an action between two states. The Court is unpersuaded by the Defendants' argument. While Godfread is acting in his official capacity as the insurance commissioner of North Dakota, the same cannot be said for the Defendants. Under Pennsylvania's "separate capacities doctrine," a government entity acting in one capacity is treated as a separate entity when acting in

another capacity. Koken v. One Beacon Ins. Co., 911 A.2d 1021, 1028 (Pa. Commw. Ct. 2006). The present action is brought against the insurance commissioner of Pennsylvania in his role as the rehabilitator of SHIP, not in his official capacity as the insurance commissioner of Pennsylvania. Therefore, the Defendants are not arms of the state of Pennsylvania when acting as the rehabilitators of a Pennsylvania insurance company.

The Court concludes the Plaintiffs are arms of the State of North Dakota and are not citizens for purposes of diversity jurisdiction. Accordingly, the parties lack diversity of citizenship. Therefore, removal was improper and remand is required under 28 U.S.C. § 1332(a)(1).

### III.   CONCLUSION

The Court has carefully reviewed the entire record, the parties' briefs, and the relevant law. For the reasons set forth above, the Court **GRANTS** the Plaintiffs' motion to remand (Doc. No. 9). The Court **ORDERS** this case be **REMANDED** to the District Court for the South Central Judicial District, Burleigh County, North Dakota.

**IT IS SO ORDERED**.

Dated this 12th day of September, 2022.

> */s/ Daniel L. Hovland*
> Daniel L. Hovland, District Judge
> United States District Court